CHESTER A BURDICK, RESPONDENT, *v.* SYLVANUS D. FREEMAN, APPELLANT.

*Jurisdiction of the courts of this State, over actions between foreigners, where the acts complained of were done in other States — the trial court will not retain jurisdiction unless special reasons exist.*

While the courts of this State have jurisdiction of an action brought to recover damages for enticing away the plaintiff's wife, and for harboring and debauching her by the defendant, when all of the parties reside in another State, and when none of the acts relied upon to sustain the action occurred in this State, yet the question as to whether or not the court will retain jurisdiction of and determine the action rests in its sound discretion, and it will not be done unless special reasons are shown to exist which make it necessary and proper so to do.

*It seems,* that where, as in this case, the only reasons alleged by the plaintiff for bringing the action in this State were that the defendant was a man of means and might have something to do with the jury "in our place, he being acquainted," and that he was advised by his attorney that if he instituted the action in this State he could have the defendant arrested, the court should not retain jurisdiction of it.

That in such a case, however, it was the duty of the defendant to present such question for the determination of the court at as early a stage of the trial as practicable.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Erie Circuit, and from an order denying a motion for a new trial.

*Charles B. Wheeler,* for the appellant.

*Tracy C. Becker,* for the respondent.

HAIGHT, J. :

This action was brought to recover damages for enticing away the plaintiff's wife and for harboring and debauching her. At the conclusion of the evidence the defendant asked the court to charge that the plaintiff cannot maintain this action in the courts of this State. The request was refused and exception taken.

It appears that the plaintiff and defendant are, and for many years have been, residents of the village of Smethport, in the State of Pennsylvania, and that that place is the county seat of McKean county, and that none of the acts complained of on this trial were committed within the State of New York. The complaint does allege that the defendant debauched and carnally knew the plaintiff's wife, at the village of Niagara Falls, on the 7th day of January, 1885. It was claimed that they went there together and staid over night at the Spencer House, occupying the same room, and that they registered as Robert D. Crawford and wife, Philadelphia, Pennsylvania. It turned out, however, that Robert D. Crawford and wife, of Philadelphia, were there in person and occupied the room taken on the night in question; and the plaintiff, upon the trial of this action, admitted that he was mistaken in reference to that claim. The defendant was a physician and a graduate of the Buffalo Medical University. At the time this action was commenced he was temporarily in the city of Buffalo attending the commencement exercises of the university, and was in the act of taking the cars on his return home when he was arrested upon an order issued in this action. It is urged that the courts of this State should not retain jurisdiction of an action of this character when all the parties reside in another State, and when none of the acts relied upon occurred in this State.

In the case of *Gardner* v. *Thomas* (14 Johns., 134) the action was for an assault and battery committed on the high seas on board of a British vessel, both parties being British subjects. At the trial the plaintiff had judgment, which was reversed on appeal, the court holding that whilst the courts of this State have jurisdiction of actions brought for torts committed on board of foreign vessels on the high seas, where both parties are foreigners, it rests in the sound discretion of the court to exercise jurisdiction or not according to the circumstances of the case; that both parties being British sub-

jects, intending to return to their own country at the completion of the voyage, the court should have refused to take cognizance of the case, leaving the injured party to seek redress in the courts of his own country.

In the case of *Johnson* v. *Dalton* (1 Cow., 543) the action was for damages for an assault and battery committed on the high seas on board of a British vessel, the parties being British subjects. The rule, as stated by the court, was that our courts may take cognizance of torts committed on the high seas on board a foreign vessel when both parties are foreigners. But on principles of comity, as well as to prevent the frequent and serious injuries that would result from doing this in all cases indiscriminately, they have exercised a sound discretion, entertaining jurisdiction or not, according to the circumstances. Accordingly, the great inconveniences which would arise from it have induced them to decline interference in ordinary cases and leave the parties to seek redress in the courts of their own country. It was held, however, in this case, that, inasmuch as the plaintiff had been expelled from the vessel by the master in this State, and not permitted to return to the vessel and continue his voyage to his own country, that a proper case was presented in which our courts might properly retain jurisdiction.

In the case of *Molony* v. *Dowes* (8 Abb., 316) the action was brought to recover damages for injuries alleged to have been sustained by the plaintiff at the hands of the defendant, in San Francisco, California, during the time that the government of that city was administered by what is known as the vigilance committee. The plaintiff claimed that he was an enlisted soldier in the militia of the State, and while in such service was deputed to convey certain arms which had been furnished to the State from Benicia to San Francisco; that while conveying these arms the defendant and others seized him and the arms and committed violent assaults upon his person, and that he was imprisoned in a dungeon for several days and was subsequently placed on board of a steamboat for New York and told never to return upon pain of death. It was held by DALY, J., that the courts of this State had no jurisdiction and the complaint was dismissed.

In the case of *Dewitt* v. *Buchanan* (54 Barb., 31) the action was for damages for an assault and battery committed in Canada, both

parties being British subjects and residents of that country. JAMES, J., in delivering the opinion of the court, says, that "actions for injuries to the person are transitory and follow the person; and, therefore, so far as the nature of the action is concerned, one foreigner may sue another foreigner in our courts for a tort committed in another country, the same as on a contract made in another country. * * * But as a question of policy there are many reasons why jurisdiction should not be entertained. Unless for special reasons non-resident foreigners should not be permitted the use of our courts to redress wrongs or enforce contracts committed or made within their own territory. Our courts are organized and maintained at our own expense for the use, benefit and protection of our citizens. Foreigners should not be invited to bring their matters here for litigation. But if a foreigner flee to this country he may be pursued and prosecuted here. Nothing appears in this case showing why jurisdiction should be entertained. It seems an ordinary case of assault and battery committed in Canada, both parties still residing there, the defendant being casually here when arrested. It is most clearly against the interests of those living on the border for our courts to encourage or entertain jurisdiction of such actions. To do so would establish a practice which might often be attended with serious disadvantage to persons crossing the border. The true policy is to refuse jurisdiction in all such cases unless for special reasons shown." It will be observed that this case disapproves of the rule as stated by DALY, J., in *Molony* v. *Dowes*, in so far as he held that the court had no jurisdiction, instead of being a question of discretion as to whether jurisdiction should be retained under the circumstances of the case. This doctrine does not appear to have been questioned or disapproved in any reported case to which our attention has been called. On the other hand it has been expressly approved. (*Newman* v. *Doggard*, 3 Hun, 70; Wharton on the Conflict of Laws, § 707.)

There are cases in which jurisdiction has been retained, but they are cases in which reasons appear for such retention. In one case a party charged with having committed a fraud, had come into this State and was about embarking for a long voyage upon the high seas. Surely in such a case the courts should retain jurisdiction, for the defrauded party could no longer seek redress in the courts

of his own State, the defendant being in the act of leaving the country. Other cases appear, in which the domicile of the parties, or one of them, had subsequently been changed to this State. See, also, *Lister* v. *Wright* (2 Hill, 320); *Latourette* v. *Clark* (30 How., 242); *McIvor* v. *McCabe* (26 id., 257).

In the case under consideration the only reason given by the plaintiff for bringing his action in this State was that he could not get, as he thought, his witness Oshaugnessy to go out of the State; that he knew the defendant Freeman was a man of means and might have something to do with the jury "in our place, he being acquainted;" and that he was advised by his attorney that if he instituted the action in this State he could have the defendant arrested. The witness Oshaugnessy was the witness relied upon to prove the charge laid at Niagara Falls, which was abandoned upon the trial. The fact that a party is acquainted in his own State, or that there is suspicion that he may influence a jury in that State, are not reasons that we can recognize for retaining jurisdiction. Neither can we recognize as a reason, the fact that our laws permit an order of arrest to issue in cases of this character. This remedy is proper, and in many cases effectual; but care should be exercised in order to prevent its being used to persecute and annoy.

As we have seen, the courts had jurisdiction and the question was as to whether it should be retained. The determination of this question rested in the sound discretion of the trial court, and it should have been called upon to exercise it, in order to present the question for review. No motion for nonsuit or for a dismissal of the complaint was made upon this ground. The only thing that was done was a request to charge the jury after the evidence had been closed, " That the plaintiff cannot maintain this action in the courts of this State." This request may well have been understood by the court to refer to the question of jurisdiction and not to the exercise of the discretion vested in it. The trial was a long one, occupying eleven days, and had the defendant desired to avail himself of this question, he should have called upon the court to pass upon it as early as *practicable* instead of waiting until the end of the trial. It is true the complaint contained a charge of criminal intimacy at Niagara Falls, in this State, but this charge was practi-

cally abandoned in the early part of the trial by the admission of the plaintiff that he was mistaken in regard to it.

The court, in charging upon the request of plaintiff's counsel upon another subject, made use of the expression: "But if her husband maltreated her, and the doctor interfered and helped get her away from the husband, he is liable." This expression, standing alone, would not be a correct statement of the rule. The court was asked to charge another proposition, and was charging upon that subject when it made use of these words. The court, in its charge, had previously stated the correct rule upon this subject, and we do not believe that the omission to make use of the qualifying words, in connection with this statement, resulted in prejudice to the defendant. Again the exception was general and did not call the attention of the court to the point.

The court was also requested to charge that: "There is not sufficient evidence in the case to warrant the jury in finding that adultery was committed between the defendant and the plaintiff's wife in the city of Grand Rapids, Michigan." Similar requests were made in reference to other places, naming them. It is quite possible that the evidence in reference to these various place, standing alone, would not be sufficient to authorize the finding that adultery was committed at any one of them. We are aware that the evidence of an opportunity is not sufficient to warrant the finding. But we are to take this evidence into consideration in connection with the other evidence in the case, which, if true, would justify the finding; such as the going to the opera house by the servant girls; the refusal of Mrs. Burdick to go with them for the reason that she expected company; their return sooner than expected, finding the house locked and the lights turned down, with the defendant and Mrs. Burdick up-stairs in a sleeping room until eleven o'clock at nigh.

The judgment should, therefore, be affirmed.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred.

Judgment and order affirmed.